GRAYSON v. HAYS. (No. 7099.)

Court of Civil Appeals of Texas. Austin.
May 4, 1927.

Rehearing Denied May 25, 1927.

1. Joint tenancy ⟨⟩14—Petition held not to allege conversion of animals owned jointly, but only conversion of proceeds of sale.

Petition for one-half net proceeds from sale of sheep and goats owned jointly *held* not to allege conversion of animals, but merely conversion of proceeds derived from their sale.

2. Trial ⟨⟩169—Contention that petition alleged only conversion of proceeds from sale of animals held properly raised by request for peremptory instruction and objections to submitting issues.

·In action for half of net proceeds received from sale of sheep and goats alleged to have been owned jointly by parties, contention that petition did not allege conversion of animals, but merely conversion of proceeds derived from their sale, was properly raised by request for peremptory instruction and objections to submission of issues.

3. Witnesses ⟨⟩414(2)—Bank cashier's testimony of defendant's statements to him as to plaintiff's interest in animals held admissible to corroborate defendant's testimony.

In action for half of net proceeds received by defendant from sale of sheep and goats alleged to have been jointly owned, where plaintiff offered joint mortgage by him and defendant to bank to show admission by defendant

that plaintiff was joint owner of animals, excluding bank cashier's testimony that defendant told him that plaintiff was interested in increase of animals was error, it being admissible to corroborate defendant's testimony against objection that it was hearsay, not binding on plaintiff unless he was present and knew of it.

4. Limitation of actions ⟨⟩55(1)—Cross-action filed more than four years after last act with reference to joint property held barred by limitations.

In action for one-half net proceeds received by defendant from sale of animals alleged to have been owned jointly by defendant and plaintiff, sustaining special exception based on 4-year statute of limitations to portion of defendant's answer setting up cross-action against plaintiff, where answer was filed more than four years after sale of animals, which was last act with reference to joint property and at which time every right defendant had against plaintiff had accrued, was proper.

On Motion for Rehearing.

5. Evidence ⟨⟩413—Testimony of bank, cashier as to statement of mortgagor concerning interest of joint mortgagor in property held admissible against objection that it varied chattel mortgage.

In action for half of proceeds of sale of animals alleged to have been owned jointly by plaintiff and defendant, in which plaintiff introduced joint chattel mortgage by him and defendant to bank, bank cashier's testimony that defendant stated to him that plaintiff was interested in increase of animals was admissible as against objection that it varied written instrument by parol.

Appeal from District Court, Tom Green County; J. F. Sutton, Judge.

Action by W. L. Hays against Sam Grayson. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Thomas & Lewis, of San Angelo, for appellant.

Anderson & Mobley, of San Angelo, for appellee.

McCLENDON, C. J. Hays sued Grayson for $702.25, which the former alleged was one-half of the net proceeds received by the latter from sale of certain sheep and goats owned jointly by them. There was a trial to jury on special issues and judgment for Hays for $255.76 (of which $184 was principal and $71.76 interest) and costs. Grayson has appealed.

The case was submitted to the jury upon the theory of a conversion of the animals by Grayson and his liability to account to Hays for one-half of their net market value. Appellant contends that appellee's petition will not support recovery upon this theory, but that the only cause of action alleged is for wrongful conversion of the proceeds of the sale. As this contention involves a proper construction of plaintiff's petition, we here

quote the pleading in full, omitting only the formal portions and prayer:

"Second. For cause of action plaintiff shows the court that heretofore, on or about January 15, 1920, plaintiff and defendant were the joint owners of the following described personal property situated in Tom Green county, Tex., to wit, 120 head of ewe sheep of the reasonable market value of $15 per head, 54 head of lambs of the reasonable market value of $8 per head, 3 bucks of the reasonable market value of $20 per head, and 10 head of mutton sheep of the value of $5 per head, 45 goats of the market value of $5 per head, and 750 pounds of wool and mohair of the market value of 60 cents per pound, making a total value of $2,917; that all of said property was subject to an indebtedness of $1,275 owing by plaintiff and defendant, and in addition thereto the plaintiff advanced the sum of $237.50, for which amount he would be entitled to a credit.

"Third. That on or about January 15, 1920, the defendant took possession of all of the above-described personal property, sold and disposed of the same for the market value thereof as above alleged, and has converted the proceeds thereof to his own use and benefit, and has failed, and still now fails and refuses, to pay to plaintiff his one-half thereof, or any part of same. In this connection, plaintiff shows the court that plaintiff and defendant were the joint owners of all of said propery, each owning a one-half interest thereof, and each owed one-half of the indebtedness against same, and plaintiff shows the court that after deducting the amount of the indebtedness, $1,275 owing thereon at the time by plaintiff and defendant, and the $237.50 advanced by plaintiff, leaves a balance of the value of the proceeds from said personal property of $1,404.50, one-half of which is the property of this plaintiff, that is, the sum of $702.25, for which amount he brings this suit and asks judgment of the court for same, together with interest and costs of suit."

Grayson's answer alleged in substance that the contract with Hays did not give the latter any interest in the animals, but only in the increase and in the wool produced, for which interest Hays was to feed, pasture, and care for the animals; that in the fall of 1919 Hays declined to further carry out his part of the agreement, and Grayson was compelled to take charge of the animals and to feed, pasture, and care for them until he finally sold them on January 15, 1920, to one Duncan for $1,500, which sale was entirely on credit, Grayson taking Duncan's note for that amount, due one year after date, and secured by chattel mortgage on the property; that due to financial reverses, resulting in part at least from a slump in the sheep and goat market, Duncan was unable to pay the note at maturity, and Grayson was compelled to recover back the animals under foreclosure proceeding; that in June, 1921, he finally disposed of the animals by trading them to one Hassel for property, the equity in which was worth not more than $625. He set up various items of expense in connection with caring for the animals both before and after the sale to Duncan, including court costs and attorney's fees in the foreclosure proceeding, and showed a balance of indebtedness of Hays to him in the sum of $400, for which he sued by way of cross-action.

The evidence was sufficient to support the theory of either plaintiff or defendant with reference to the terms of their agreement. Hays denied that he abandoned the contract in the fall of 1919, testifying in this regard that the animals were put in Grayson's pasture at the latter's suggestion, and were sold by Grayson without his knowledge or consent. Grayson's testimony on this issue supported the above allegations of his answer. It is undisputed that the sale to Duncan was on credit at least to the extent of the $1,500 note. The only issue the evidence raised in this regard was whether Duncan paid $350 additionally to Grayson. Duncan testified that he did make such additional payment by check, but that the total amount of $1,850 covered, in addition to the animals, some feed and chickens, but he could not give the amount these items figured in the trade. Grayson denied that he got anything from Duncan in the transaction except the $1,500 note. The evidence will not support a finding that Grayson realized from the animals, even including the $350 disputed item, enough to reimburse him for his outlay, after he got them back from Duncan.

The jury made the following findings: (1) That "plaintiff and defendant jointly owned the entire flock of sheep and goats in controversy"; (2) that defendant did "on or about the 15th day of January, 1920, take possession of such sheep and goats and sell the same and convert the proceeds thereof to his own use without the consent of the plaintiff, W. L. Hays"; (3) that the number of sheep so jointly owned was 160 head; (4) of the reasonable market value of $9 per head; (5) and the number of goats was 60 head; (6) of the reasonable market value of $4 per head; (7) that defendant incurred $162 expenses in connection with the animals prior to the sale to Duncan; (8) that he realized $305 from the sale of the wool and mohair; (9) with an outlay of $40 for shearing and marketing; (10) that plaintiff realized $80 from the sale of wool and mohair; (11) and did not pay any of the proceeds thereof to defendant, and (special issue at defendant's request) that plaintiff did "voluntarily cease to furnish pasture for and look after the sheep and goats involved herein at or about the time they were removed to defendant's pasture north of San Angelo."

[1] We sustain appellant's contention that the petition does not allege a conversion of the sheep, but merely a conversion of the proceeds derived from their sale. It is true that plaintiff alleged the market value of the animals, but he nowhere intimated that defendant, whom he alleged to be a joint owner

and entitled in addition to his half interest to certain amounts which were a charge on the proceeds superior to the undivided interest of either party, acted without authority or in any way wrongfully in making the sale. The wrongful act complained of was clearly and distinctly stated in the petition to consist in the disposition of the proceeds of the sale, which proceeds defendant was alleged to have converted to his own use, failing to account to plaintiff for any part of his interest therein. Plaintiff set up the amount owing on the sheep, and alleged that this "leaves a balance of the value of the proceeds from said personal property of $1,404.50, one-half of which is the property of this plaintiff, that is, the sum of $702.25, for which amount he brings this suit and asks judgment of the court for same." The allegation of market value is connected up in the petition with the allegation that the defendant sold and disposed of the animals "for the market value thereof as above alleged," which is immediately followed by the allegation that he converted the proceeds thereof to his own use and failed to account to plaintiff for his one-half interest therein.

We are unable to place upon the pleading a construction other than that the suit was for conversion of the proceeds of sale and not for conversion of the property sold.

[2] This contention was properly raised by request for peremptory instruction and objections to the submission of issues, and is sustained.

[3] We also sustain appellant's contention based upon the exclusion of testimony of the witness Rives, which arises in the following manner: In the summer of 1919, plaintiff and defendant executed a joint chattel mortgage on the animals in favor of a bank of which Rives was cashier. This mortgage was introduced in evidence by plaintiff as showing or tending to show the joint interest of plaintiff and defendant in the property. It had no other purpose in the case, as the amount of the mortgage was not only not controverted but was admitted in plaintiff's petition. Defendant testified in substance that when he applied to the bank for a loan secured by a mortgage on the animals, he was questioned by Rives as to their ownership, they then being in the possession of Hays, and when he informed Rives of Hays' interest in the increase and wool, Rives required the signature of Hays to the mortgage. The testimony of Rives, which was excluded, was to the effect that Grayson told Rives at the time in question that Hays was interested in the increase of the sheep and goats, "and that the said N. S. Rives then explained to defendant that it would be necessary for plaintiff to sign the mortgage with defendant in order to cover the entire interest in the sheep." This evidence was offered for the purpose of showing that the joint execution of the mortgage to the bank was not an admission by the defendant that the plaintiff owned a half interest in the sheep and goats. The objection to the testimony was on the ground that it was hearsay and not binding on plaintiff, who was not present and was not shown to have known of the conversation. The testimony was admissible, we think, for the sole purpose of corroborating the testimony of Grayson. Plaintiff having offered the mortgage as an admission on the part of Grayson that Hays was joint owner of the animals, it was certainly competent to show the circumstances under which Hays joined in the mortgage, and in order to do so it was necessary to detail what transpired between Hays and the cashier of the bank in their transactions leading up to the execution of the mortgage. These transactions necessarily involved what was said by the respective parties. The fact of a joint mortgage, unexplained, would ordinarily have the effect of an unequivocal admission by each of the parties that the other was interested, and where the other testimony on the issue was conflicting, the joint mortgage would no doubt have a controlling effect upon the mind of a disinterested party. Under these circumstances we think it was clearly competent to show that the joinder of Hays was at the instance or suggestion of the bank, and that Grayson, instead of admitting Hays' joint interest in the animals, stated at the time that he was only interested in the increase and the wool.

[4] The only other question raised by appellant which we think needs mention is with reference to sustaining a special exception urging the 4-year statute of limitations to that portion of appellant's answer setting up a cross-action against appellee. So far as the record shows, this action of the court was proper since the answer was filed May 17, 1926, more than four years after the sale to Hassel, which was the last act with reference to the joint property, and at which time every right the defendant had against the plaintiff had accrued.

The other questions raised are immaterial under the above holdings. Their materiality upon another trial will depend upon the issues raised by pleading and evidence which we cannot forecast.

For the errors pointed out, the trial court's judgment is reversed and the cause remanded to that court for a new trial.

Reversed and remanded.

### On Motion for Rehearing by Appellee.

[5] Appellee contends that our holding that the trial court committed error in excluding the testimony of Rives relative to the conversation between him and Grayson concerning the ownership of the animals in question at the time the chattel mortgage was executed to the bank was erroneous for the

reason that the testimony excluded was an attempt to vary the terms of a written instrument by parol. The only objection made to the testimony in the trial court was that it was hearsay and not binding on the plaintiff unless he was present and knew of it, and we accordingly considered only this specific objection. The contention now urged, however, is equally without merit. No attack was made upon the binding effect of the mortgage or any of its terms or provisions. It was introduced in evidence by plaintiff as an admission by the defendant of joint ownership of the animals in suit. The evidence offered was merely for the purpose of rebutting inferences to be drawn from the joint signing of the mortgage of joint title in the property mortgaged. The elementary rule of law invoked by appellee has no application to the issue involved in the relevancy and competency of the evidence excluded.

The motion is overruled.

Motion overruled.